IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GARY G. WILSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-08-555-D |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## **REPORT AND RECOMMENDATION**

Plaintiff Gary Wilson seeks judicial review of a denial of benefits by the Social Security Administration ("SSA"). The Court should reverse and remand for further proceedings.

BACKGROUND

Mr. Wilson applied for supplemental security income and insurance benefits based on an alleged disability. Administrative Record at pp. 222-26 (certified July 2, 2008) ("Rec.").[1] The SSA denied the applications,[2] and the present action followed. Mr. Wilson

---

[1]   The application for supplemental security income was not included in the record. *See* Rec. at p. 4C.

[2]   Rec. at pp. 5-8, 13-22.

alleges selective review of the evidence and failure to explain the significance of material evidentiary items.[3]

## STANDARD OF REVIEW

The Court must determine whether the SSA's decision is based on substantial evidence and the correct legal standard. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). In this circuit, the SSA must follow specific rules when weighing the evidence, and departure from these rules constitutes reversible error. *See Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988).[4]

## SELECTIVE REVIEW AND FAILURE TO DISCUSS MATERIAL PARTS OF THE RECORD

Mr. Wilson argues that the administrative law judge had selectively reviewed the medical evidence and failed to discuss parts of the record. In response, the Defendant contends that the judge had no duty to discuss every piece of evidence. But the significance

---

[3] Mr. Wilson also alleges:

- a failure to explain the residual functional capacity ("RFC") assessment,
- an erroneous credibility analysis, and
- errors at steps four and five.

The Court need not consider these arguments in light of the suggested reversal on other grounds. *See infra* pp. 2-14; *see also Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the [administrative law judge's] treatment of this case on remand.").

[4] There the court stated: "There are specific rules of law that must be followed in weighing particular types of evidence in disability cases. Failure to follow these rules constitutes reversible error." *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988) (citations omitted).

of the judge's omissions cannot be resolved simply through use of a label, such as selective review of the evidence or the absence of a requirement to discuss every piece of evidence. Instead, the Court must determine whether the omissions were material. The Court should answer in the affirmative.

I.   The Omitted Evidence

The administrative law judge did not discuss:

- Dr. Morris' diagnosis of a personality disorder,

- results from an intelligence test administered by Ms. Braddock,

- an opinion by Dr. Cherry regarding the Plaintiff's judgment, insight, and capability, and

- Dr. McKinney's conclusion that the Plaintiff suffered from a marked limitation in the ability to understand, remember, and carry out detailed instructions.

   A.   Dr. Morris' Diagnosis of a Personality Disorder

Leon Morris, Ed.D., F.A.C.F.P. conducted a psychological evaluation for the pertinent state agency and diagnosed the Plaintiff with somatoform disorder and personality disorder. Rec. at pp. 121, 124. The administrative law judge adopted part of Dr. Morris' opinions,[5] but omitted any discussion of a personality disorder. *See id.* at pp. 13-22. The Defendant argues that the judge had considered Dr. Morris' diagnoses of a somatoform disorder and

---

[5]   The administrative law judge stated: "As for the opinion evidence, the undersigned lends great weight to the opinion of Leon Morris, Ed.D. His analysis seems rather in-depth and structured enough to capture the claimant's innermost thoughts." Rec. at p. 20.

personality disorder, relying on the reference to Dr. McKinney's opinion. There the administrative law judge had stated: "Dr. McKinney acknowledged the claimant's diagnosis of Somatoform Disorder NOS, but still maintained that he had the ability to do work-related activities adequately for many types of employment." *Id.* at p. 17; *see also id.* at p. 20.[6] The Defendant's reliance on this portion of the decision is misplaced.

Contrary to the Defendant's statements, the decision did not reflect consideration of a personality disorder and Dr. McKinney did not discuss this condition. *See id.* at pp. 17, 20, 142, 148.

B.   Ms. Braddock's Intelligence Testing

At the request of the Department of Human Services, Ms. Susie Braddock administered Mr. Wilson the Weschler Adult Intelligence Scale-Third Edition test. *Id.* at pp. 110-14. The test revealed "[e]xtremely [l]ow" range of functioning in all areas tested, including general cognitive, verbal reasoning, performance scores, working memory, and processing speed abilities. *Id.*

At step two, the administrative law judge relied on Ms. Braddock's report and concluded that the Plaintiff suffered from borderline intellectual functioning. *Id.* at p. 15; *see infra* p. 7. These conclusions suggested limitations on the complexity of the work that Mr. Wilson could perform. But at step four, the administrative law judge found an ability to

---

[6]   At page 20, the administrative law judge stated: "In Dr. McKinney's Psychiatric Review Technique, she maintains that, despite his diagnosis of Somatoform Disorder NOS and BIF, the claimant still has the ability to adequately do work-related activities for many types of employment." Rec. at p. 20.

4

perform detailed work without any mention of the Plaintiff's borderline intellectual functioning or Ms. Braddock's assessment of extremely low functioning in all mental areas tested. Rec. at pp. 18-20; *see infra* p. 7 & note 13.

### C.     Medical Opinion by Dr. Cherry

John Cherry, D.O. examined the Plaintiff and concluded that he was severely disabled in part because his "[j]udgment, insight and capability [we]re questionable." Rec. at p. 116. The administrative law judge did not comment on this opinion.

### D.     Dr. McKinney's Opinion

Margaret McKinney, Ph.D. conducted a psychological evaluation for the pertinent state agency. *See id.* at pp. 132-48. She concluded that Mr. Wilson had suffered from a marked limitation in the ability to understand, remember, and carry out detailed instructions. *Id.* at p. 132.

At the end of her report, Dr. McKinney rendered the following functional capacity assessment: "[Mr. Wilson] has the ability to perform simple tasks on a routine basis. He has the ability to interact appropriately with co-workers and supervisors and the general public. He has the ability to respond appropriately to changes in the workplace." *Id.* at p. 134. The administrative law judge acknowledged part of Dr. McKinney's opinion and incorporated it into the RFC assessment. *See id.* at p. 18 ("The work must be . . . simple to detailed, and not complex."). But the administrative law judge did not address the opinion involving a marked limitation in the ability to understand, remember, and carry out detailed instructions.

II.     Materiality of the Omissions

The resulting question is whether the omissions were material. This inquiry is guided by the nature of the omitted evidence.

    A.     Dr. Morris' Diagnosis of a Personality Disorder

As discussed above, the administrative law judge did not discuss Dr. Morris' diagnosis of a personality disorder. *See supra* pp. 3-4. "A personality disorder exists when personality traits are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress." 20 C.F.R. pt. 404, subpt. P, App 1 § 12.08 (2007). The Tenth Circuit Court of Appeals has held that the failure to consider diagnosis of a personality disorder constituted reversible error.[7]

Under the regulations, an administrative law judge must "always" consider diagnoses by psychologists. 20 C.F.R. §§ 404.1527(a)(2), (b), 416.927(a)(2), (b) (2007). Even though the judge did not discuss the diagnosis of a personality disorder, the Defendant argues that the Plaintiff had not linked the condition to a work-related limitation. But in the absence of further discussion, the administrative law judge could not simply assume that Mr. Wilson's work ability would be unaffected by a personality disorder. *See McCadney v. Astrue*, 519

---

[7]     *Salazar v. Barnhart*, 468 F.3d 615, 622 (10th Cir. 2006) (reversing because the administrative law judge had failed to consider diagnosis of a borderline personality disorder); *see also Simien v. Astrue*, 2007 WL 1847205, Westlaw op. at 1 (10th Cir. June 28, 2007) (unpublished op.) (reversing because the administrative law judge had "failed to even mention" several of the claimant's diagnoses of mental disorders).

F.3d 764, 767 (8th Cir. 2008) ("It would seem that "[diagnoses including personality disorders] would have an effect on [the claimant's] ability to work.").

    B.    <u>Ms. Braddock's Intelligence Testing</u>

As discussed above, Ms. Braddock tested Mr. Wilson's intelligence and found extremely low functioning in multiple areas. *See supra* p. 4. At step two, the administrative law judge relied on this report and concluded that Mr. Wilson had borderline intellectual functioning. Rec. at p. 15; *see supra* p. 4. At step four, the judge concluded that Mr. Wilson could perform work that was simple to detailed. Rec. at p. 18; *see supra* pp. 4-5; *infra* note 13.

Nothing in the decision would suggest consideration of Ms. Braddock's test results in connection with the RFC. If the judge did consider the results in the functional assessment, she did so silently and without any explanation. As a result, the Court has no meaningful way to ascertain how the administrative law judge had assessed Ms. Braddock's report.

According to the Defendant, the administrative law judge could have questioned Ms. Braddock's data because Dr. Morris had suspected a lack of effort in the I.Q. tests that he administered. But the administrative law judge never discussed Ms. Braddock's results. *See supra* pp. 4-5, 7. Thus, the Court lacks any meaningful way to determine whether the administrative law judge had inferred manipulation of results on Ms. Braddock's tests. Ms.

Braddock herself did not question Mr. Wilson's effort,[8] and the Defendant's *post-hoc* rationale cannot be used to salvage the decision.[9]

Ms. Braddock's results could have affected the outcome, and the administrative law judge should have considered them. The Court cannot determine whether the administrative law judge had done so because she never discussed the results.

### C. Medical Opinion by Dr. Cherry

The missing evidence by Dr. Cherry involves a medical opinion by an examining doctor. *See supra* p. 5. This opinion carries special weight.

The SSA bears an obligation to evaluate every "medical opinion" that it receives. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d) (2007) ("Regardless of its source, we will evaluate every medical opinion we receive."). Even when an examining doctor is not considered a "treating physician," the administrative law judge must "provide specific, legitimate reasons for rejecting" the opinion. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003) (citation omitted).

The administrative law judge did not discuss Dr. Cherry's opinion that the Plaintiff was severely disabled in part because of his questionable judgment, insight, and capability. *Supra* p. 5; *see* Rec. at pp. 13-22. The social security regulations specify that the use of

---

[8]   *See* Rec. at pp. 110-14.

[9]   *See Haga v. Astrue*, 482 F.3d 1205, 1207-1208 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the [administrative law judge's] decision that are not apparent from the [judge's] decision itself." (citations omitted)).

judgment is an aptitude that is necessary for most jobs. *See* 20 C.F.R. §§ 404.1521(b)(4), 416.921(b)(4) (2007). As a result, Dr. Cherry's assessment of this aptitude could have affected the outcome.

According to the Defendant, the administrative law judge could have discounted Dr. Cherry's opinion because he did not evaluate mental function, lacked complete information, and only referred incidentally to the psychological difficulty. These rationales cannot cure the omission because they were never expressed by the administrative law judge.[10]

### D. Dr. McKinney's Opinion

As noted above, the administrative law judge also failed to discuss Dr. McKinney's opinion that the Plaintiff had a marked limitation in the ability to understand, remember, and carry out detailed instructions. *See supra* p. 5.

Under Social Security Ruling 96-6p, administrative law judges "may not ignore [the] opinions [of agency physicians] and must explain the weight given to the opinions in their decisions."[11] Thus, the Tenth Circuit Court of Appeals has required administrative law judges to discuss and weigh the opinions of agency doctors.[12] The judge violated this

---

[10]   *See supra* p. 8 & note 9.

[11]   Social Security Ruling 96-6p, *Policy Interpretation Ruling Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence*, 1996 WL 374180, Westlaw op. at 2 (July 2, 1996).

[12]   *See Shubargo v. Barnhart*, 161 Fed. Appx. 748, 753-54 (10th Cir. Dec. 13, 2005) (unpublished op.) (reversing based on the administrative law judge's failure to discuss an opinion by a state agency physician); *Tiger v. Apfel*, 141 F.3d 1186, 1998 WL 166246, Westlaw op. at 2 (10th Cir. Apr. 7, 1998) (unpublished op.) (holding that the administrative law judge's failure to "discuss and weigh" opinions by an agency psychologist constituted error).

requirement for Dr. McKinney's opinion and the omission proved material in light of the assessment that Mr. Wilson could perform detailed work.[13]

The Defendant argues:

- Dr. McKinney did not say that the Plaintiff would be unable to return to his work as a dispatcher or taxi driver[14] and

- the administrative law judge did not rely upon jobs requiring "detailed work."

The Defendant's point is unclear. Presumably, the Defendant is arguing that omission of Dr. McKinney's opinion was harmless because the administrative law judge had not relied upon detailed work to deny the claim at steps four and five. Such an argument would be invalid.

An administrative error can be considered harmless only when the Court "could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). Under this standard, the Court cannot regard omission of Dr. McKinney's opinion as harmless.

The administrative law judge concluded that the Plaintiff could return to past relevant work as a dispatcher or perform as a food/beverage order clerk, office helper, hand packer, or garment assembler. Rec. at pp. 20-21. But the Court cannot assume that reliance upon

---

[13] Rec. at p. 18; *see Confere v. Astrue*, 235 Fed. Appx. 701, 703-704 (10th Cir. Apr. 24, 2007) (unpublished op.) (reversing for failure to consider an opinion that the plaintiff was markedly limited in the ability to understand, remember, and carry out detailed instructions); *see also supra* pp. 4-5, 7.

[14] The administrative law judge found that the Plaintiff would have been unable to work as a taxi driver. Rec. at p. 20. Thus, the Defendant's reference to this position is immaterial.

these jobs would have remained the same if the administrative law judge had considered Dr. McKinney's opinion.

The vocational expert was asked two series of hypothetical questions. In the first, she was asked to assume the ability to perform "simple to detailed" jobs. *Id.* at pp. 402-404. In the second, the vocational expert was asked to assume the ability to perform "simple to detailed" work. *Id.* at p. 404. The vocational expert did not mention the jobs as a dispatcher, office helper, or garment worker when asked to assume "simple to detailed" work. *See id.* at pp. 402-404. These jobs were added only when the vocational expert was asked to assume that the Plaintiff could perform "detailed" work. *Id.* at pp. 404-405. Thus, the ability to perform "detailed" work appeared to significantly influence the administrative law judge's reliance on the jobs as a dispatcher, office helper, and garment worker. In these circumstances, one cannot assume that the outcome would have remained the same if the administrative law judge had considered Dr. McKinney's opinion. She questioned the Plaintiff's ability to perform detailed work, and the vocational expert assumed that ability when she said that Mr. Wilson could work as a dispatcher, office helper, or garment worker.

As noted above, the administrative law judge also relied on jobs as a hand packer and food/beverage order clerk. *See supra* p. 10. For these jobs, the judge pointed to Job Codes "920.578718" and "209.567014" as stated in the Dictionary of Occupational Titles. Rec. at p. 21.

Under this document, work as a "hand packer" would require a reasoning level of "2," which encompasses the ability to carry out "detailed" instructions. Dictionary of Occupational Titles 920.587-018, 1991 WL 687916 (4th rev. ed. 1991).[15]

The Dictionary of Occupational Titles provides similar requirements for a job as a "food and beverage clerk." For example, this type of work requires:

- a reasoning level of "3," which is defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations" and

- general learning ability and verbal aptitude in the middle third of the population.

Dictionary of Occupational Titles 209.567-014, 1991 WL 671794 (4th rev. ed. 1991).

If the administrative law judge had credited Dr. McKinney's opinion, finding marked restrictions in the ability to carry out detailed instructions, the result might have been different. In these circumstances, the judge could have found the Plaintiff unable to work as a "hand packer" or "food and beverage clerk" based on the job requirements reflected in the Dictionary of Occupational Titles. And in light of the vocational expert's testimony,

---

[15] The vocational expert testified that the "hand packer" job was "unskilled." Rec. at pp. 402-403. But even when a job is "unskilled," it may require the ability to carry out detailed instructions. *See Brock v. Barnhart*, Case No. CIV-03-244-L, slip op. at 11 (W.D. Okla. Apr. 28, 2004) (unpublished report and recommendation by magistrate judge, holding that even though two jobs were "unskilled," classification in the Dictionary of Occupational Titles as a "reasoning level" of "2" would appear to exceed the claimant's "ability to remember and understand very short and simple instructions and carry out simple, one to two step repetitive tasks" (citations omitted), *adopted* (W.D. Okla. May 21, 2004) (unpublished order by district judge); *accord Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997) ("The Social Security's own list of unskilled sedentary jobs . . . indicates that many jobs within this range require more than the mental capacity to follow simple instructions." (citation omitted)).

consideration of Dr. McKinney's opinion could have led the administrative law judge to find Mr. Wilson unable to carry out the detailed instructions necessary as a "dispatcher," "office helper," or "garment worker."  In light of the reasonableness of these possibilities, the administrative law judge's failure to consider Dr. McKinney's opinion cannot be regarded as harmless.

## SUMMARY

Both parties rely on truisms.  An administrative law judge cannot selectively review the evidence, but he also is under no obligation to discuss every item in the record.  In the present action, the administrative law judge unquestionably declined to discuss some items of evidence.  Their materiality turns on the legal significance of the evidence in the context of the administrative law judge's actual conclusions.

Viewed in this light, the omitted items proved material.  Dr. McKinney's opinion proved material because she found a marked limitation in the execution of detailed instructions, and the administrative law judge found an ability to perform detailed work.  Ms. Braddock's intelligence testing reflected extremely low functioning, which the judge considered at step two but disregarded at step four.  Dr. Cherry's opinion about the Plaintiff's questionable judgment proved significant because the subject involved an attribute required in most jobs.  And Dr. Morris' opinion was material because of the possibility that a personality disorder would have affected the Plaintiff's ability to work.  Thus, each omission was independently significant, and the administrative law judge's failure to discuss the four

evidentiary items could easily have affected the outcome. In these circumstances, the administrative law judge's consideration of the evidence was selective, and the Court must reverse and remand for further proceedings.

## NOTICE OF THE RIGHT TO OBJECT

Any party may file written objections with the Clerk of the United States District Court. *See* 28 U.S.C. § 636(b)(1). The deadline for objections is February 23, 2009. *See* W.D. Okla. LCvR 72.1. The failure to file timely objections would result in waiver of the right to appeal the suggested ruling. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

## STATUS OF THE REFERRAL

The referral is terminated.

Entered this 3rd day of February, 2009.

_Robert E. Bacharach_
Robert E. Bacharach
United States Magistrate Judge